IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Wheeler and Clevenger Oil       :
Company,
                                :
        Plaintiff,
                                :
    v.                              Case No. 2:04-cv-0558
                                :
Jeffrey Doan, et al.,               MAGISTRATE JUDGE KEMP
                                :
        Defendants.


OPINION AND ORDER

On April 2, 2004, Wheeler and Clevenger Oil Company filed an action against Jeffrey and Margaret Doan and Robert and Pauline Baker stemming from an agreement Wheeler and Clevenger Oil entered into with the Bakers for Wheeler and Clevenger Oil to supply fuel to the Bakers' gasoline station.  This action is before the Court on the parties' cross-motions for summary judgment.  Also pending is a motion by Wheeler and Clevenger Oil for sanctions against the Bakers.  For the following reasons, the motion for sanctions will be granted.  The motions for summary judgment will be granted in part and denied in part.

I.

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law.  See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in

dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  See Adickes v. S.H. Kress & Co., 398 U.S. 144(1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  See United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

II.

The following statement of facts is taken from the amended complaint and motions for summary judgment.  Wheeler and Clevenger Oil is in the business of distributing gasoline, motor fuels, and other petroleum products to its customers who then offer these products for sale at their facilities.  Wheeler and Clevenger Oil distributes Exxon products pursuant to an April 1, 2002 franchise agreement with Exxon.

The Bakers owned a gasoline station at 331 Pike Street in Marietta, Ohio.  On November 8, 1990, the Bakers entered into a lease agreement with MC ["Mark Clevenger"] Development Company.  On September 7, 1994, the lease agreement with MC Development was terminated and the Bakers and Wheeler and Clevenger Oil entered into an agreement giving Wheeler and Clevenger Oil the exclusive right to supply the Bakers' gasoline station with gasoline and motor fuels for a period of ten years, beginning on that date ("Supply Agreement").  See Amended Complaint, Exh. B at p.1.  The Supply Agreement provides that the "Right to Supply shall Touch and Concern the Land."  Id. at ¶3.  It also provides that the agreement will not affect the Bakers' right to sell the gasoline

2

station.  See id. at ¶6.  Consequently, "[i]n the event of a sale
of the premises the Bakers have the option of allowing the New
Purchaser ([s]ubject to [Wheeler and Clevenger Oil's] approval)
to continue the Supply Agreement with [Wheeler and Clevenger Oil]
or to purchase this contract from [Wheeler and Clevenger Oil] for
16% of the Selling Price of the Premises for the 1st 2 years of
the contract . . . and 10% for years 9 & 10."  Id.  The Supply
Agreement includes a handwritten clause providing that "[i]f New
Owner agrees to fulfill the original obligation to purchase
gasoline and/or motor fuels from [Wheeler and Clevenger Oil] then
the Bakers' obligation will become null & void."  Id. at ¶6A.
Finally, the Supply Agreement is "binding upon and [shall] enure
to the benefit of all parties signed [there]to, and their
respective executors, administrators, heirs, successors and
assigns."  Id. at p.3.

     In October 2003, in the tenth year of the Supply Agreement,
the Bakers sold the gasoline station to the Doans for
$275,000.00.  See Amended Complaint, Exh. A, Purchase Agreement
at ¶3.  The purchase included "the land, all appurtenant rights,
privileges and easements and all buildings and fixtures,
including four (4) six-thousand (6,000) gallon underground
gasoline tanks" and "all inventory of gasoline and gasoline
products located at 331 Pike Street at the time of the closing."
Id. at ¶2.  A handwritten note to ¶2 indicates that the sale
includes the tires in inventory.  Not included in the sale were
two Exxon signs and four gasoline pumps that were the property of
Exxon.  See id.  The Purchase Agreement does not mention the
Supply Agreement.

     At the closing, a separate agreement was entered into
between Mr. Doan and Mr. Baker that obligated Mr. Baker to
reimburse Mr. Doan on a daily basis for credit card deposits made
to Mr. Bakers' business account while that account was still in

Mr. Baker's name.  <u>See</u> Doans' Motion For Partial Summary Judgment, Exh. D.  Wheeler and Clevenger Oil never changed the credit card account previously serving the Bakers' gasoline station to an account for the Doans.

As owners of the gasoline station, the Doans ultimately decided not to purchase gasoline or fuel from Wheeler and Clevenger Oil.  Instead, they purchased gasoline and fuel from other suppliers.  In November 2003, the Doans had August Environmental remove Wheeler and Clevenger Oil's signs, lights, and dispensers.  August Environmental placed the property at the side of the building.  In January 2004, a representative of Wheeler and Clevenger Oil picked up some of the property.

On April 2, 2004, Wheeler and Clevenger Oil filed an action against the Doans and the Bakers.  It filed an amended complaint on July 29, 2004.  Against the Doans, Wheeler and Clevenger Oil asserts claims of violation of the Lanham Act, trespass, conversion, and breach of contract.  Against the Bakers, Wheeler and Clevenger Oil asserts a breach of contract claim.

The Doans assert a counterclaim against Wheeler and Clevenger Oil for tortious interference with a business relationship.  They assert cross-claims against the Bakers for conversion, breach of contract, fraud, and promissory estoppel. The Bakers assert a counterclaim against Wheeler and Clevenger Oil for breach of contract and a cross-claim against the Doans for indemnification and for costs incident to the sale of the gasoline station.  It is on the basis of these facts that the motions for summary judgment will be decided.

                          III.

The Court will first address Wheeler and Clevenger Oil's motion for monetary sanctions against the Bakers under Fed. R. Civ. P. 37(c)(1).  Wheeler and Clevenger Oil claims that the Bakers wrongfully failed to produce a signed copy of the Purchase

                           4

Agreement entered into between the Bakers and the Doans.

Rule 37(c)(1) provides that when a party "without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2)," the court may impose sanctions.

On August 24, 2004, Wheeler and Clevenger Oil served on the Bakers its first set of interrogatories and requests for production of documents.  The second request for production asked the Bakers to "produce a copy of the agreement by which you sold the Facility [at 331 Pike Street in Marietta, Ohio] to Jeffrey Doan and Margaret Doan along with any and all other agreements, contracts, correspondence, records and other Documents pertaining to the purchase and sale of the facility."  Motion For Sanctions, Exh. 2.  The Bakers responded that "[t]he sales agreement is dated August 13, 2003, and is in the possession of the plaintiff."  Id.  The document referred to by the Bakers' response is an unsigned "Purchase Agreement" that counsel for the Bakers faxed to counsel for Wheeler and Clevenger Oil on October 21, 2003.  See id. at Exh. 3.  Wheeler and Clevenger Oil contends that because this document is unsigned and does not correctly reflect Mr. Baker's name, the document does not constitute "the agreement by which you sold the Facility [at 331 Pike Street in Marietta, Ohio] to Jeffrey Doan and Margaret Doan."  It does not appear that counsel for Wheeler and Clevenger Oil pursued this matter further with the Bakers.  However, counsel for Wheeler and Clevenger Oil claims to have made a number of informal and formal discovery requests to the Doans for a copy of the Purchase Agreement.  In response to these requests, the Doans claimed not to know where a copy of the Purchase Agreement could be located. Consequently, Wheeler and Clevenger Oil incurred an expense in investigating other avenues by which to obtain a copy of the

signed purchase agreement.

On February 1, 2005, at the depositions of the Bakers, counsel for the Bakers produced a single page of the Purchase Agreement bearing the signatures of Mr. Baker and Mr. Doan. Although counsel for the Bakers did not have the first four pages of the agreement at that time, several days later counsel faxed complete copies of the Purchase Agreement to counsel for Wheeler and Clevenger Oil and counsel for the Doans.  Counsel for Wheeler and Clevenger Oil claims that the document originally faxed to him on October 21, 2003 that was referred to in response to the request for production is not the same document that was faxed to him after the Bakers' depositions.  When Mr. Baker was questioned about this during his deposition, he explained that he had "run across" the signed copy while he was looking for something else. Baker Depo. at 7.  In fact, he had not reviewed his files to look for a signed copy of the Purchase Agreement after receiving Wheeler and Clevenger Oil's discovery requests.  See id. at 56.

As the Bakers point out, the signed Purchase Agreement and the unsigned agreement that was previously faxed to counsel differ only slightly.  Even so, Wheeler and Clevenger Oil requested the actual Purchase Agreement.  What it was given in response was not the actual agreement.  Further, Mr. Baker admitted that he did not even look for a signed copy.  In Bratka v. Anheuser-Busch Co., Inc., 164 F.R.D. 448 (S.D. Ohio 1995), the Court explained that "[p]arties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents."  Id. at 463.  Mr. Baker's attempt was not even halfhearted; rather, he made no attempt at all.  Therefore, the Court concludes that Mr. Baker's conduct is sanctionable. Wheeler and Clevenger Oil's motion for sanctions will be granted. However, the Court cannot at this time determine the appropriate

6

amount of monetary sanctions.  Within 20 days of the date of this
Order, counsel for Wheeler and Clevenger Oil shall submit a bill
of costs outlining expenses incurred in attempting to locate a
signed copy of the Purchase Agreement and an affidavit attesting
to those costs.  The Court will then decide whether to award the
entirety of the fees or some portion thereof.

IV.

Wheeler and Clevenger Oil seeks summary judgment on its
claim against the Doans for violation of the Lanham Act and
conversion.  Both Wheeler and Clevenger Oil and the Doans seek
summary judgment on Wheeler and Clevenger Oil's claim against the
Doans for breach of contract.  Both Wheeler and Clevenger Oil and
the Bakers seek summary judgment on Wheeler and Clevenger Oil's
claim against the Bakers for breach of contract.  Wheeler and
Clevenger Oil seeks summary judgment on the Bakers' counterclaim
of breach of contract.  The Doans seek summary judgment on its
cross-claims against the Bakers for conversion and breach of
contract and the Bakers' cross-claim against them for
indemnification.  The Court first will address the claims
asserted by Wheeler and Clevenger Oil for which summary judgment
is sought and then the claims asserted by the Doans and finally
the claims asserted by the Bakers.

A. <u>Wheeler and Clevenger Oil's Claims</u>

1. <u>Breach of Contract Against the Doans</u>

Both Wheeler and Clevenger Oil and the Doans seek summary
judgment on Wheeler and Clevenger Oil's claim against the Doans
for breach of contract based on their failure to honor the Supply
Agreement that Wheeler and Clevenger Oil entered into with the
Bakers.  The Doans claim that they are not in breach of contract
because they were not a party to the Supply Agreement, they did
not execute an option to assume it, and it is not a real covenant
running with the land.  Wheeler and Clevenger Oil does not claim

7

that the Doans are a party to the Supply Agreement or that they assumed it. Instead, Wheeler and Clevenger Oil argues that the Doans are in breach of the contract because the Supply Agreement is a real covenant that runs with the land such that it is enforceable against them as purchasers of the Bakers' gasoline station.

Under Ohio law, a covenant runs with the land when: (1) the intent of the original grantor and grantee is for the covenant to run with the land; (2) the covenant either affects or touches and concerns the land in question; and (3) there is privity of estate between the party claiming the covenant and the party who is called upon to fulfill it. See LuMac Development Corp. v. Buck Point Ltd. Partnership, 61 Ohio App.3d 558, 562 (Ottawa Co. 1988). In Ohio, the general rule with respect to enforcing covenants that restrict the use of real estate "is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate." Bove v. Giebel, 169 Ohio St. 325, (1959) (syllabus).

For the purposes of the summary judgment motion, the Doans concede that they are in privity with the Bakers. Therefore, the only questions are whether Wheeler and Clevenger Oil and the Bakers intended the covenant to run with the land and whether it touches and concerns the land. Regarding Wheeler and Clevenger Oil's and the Bakers' intent, Wheeler and Clevenger Oil points out that the Supply Agreement provides that it is "binding upon and [shall] enure to the benefit of all parties signed [there]to, and their respective executors, administrators, heirs, successors and assigns." Amended Complaint, Exh. B at p.3. Such a phrase reflects that the intent of the parties was for the covenant to run with the land. See LuMac, 61 Ohio App.3d at 563. However,

the use of these words is not determinative of the parties'
intent. <u>See</u> <u>Peto v. Korach</u>, 17 Ohio App.2d 20, 23 (Cuyahoga Co.
1969). Instead, restrictive covenants are to be read as a whole.
<u>See</u> <u>Brooks v. Orshoski</u>, 129 Ohio App.3d 386, 391 (Cuyahoga Co.
1998). Therefore, the Court will look to the entirety of the
Supply Agreement to determine the parties' intent.

In addition to the language that the Supply Agreement shall
be binding on the Bakers' successors and assigns, it also
provides that the agreement will not affect the Bakers' right to
sell the gasoline station. <u>See</u> <u>id</u>. at ¶6. In fact, "[i]n the
event of a sale of the premises the Bakers have the option of
allowing the New Purchaser ([s]ubject to [Wheeler and Clevenger
Oil's] approval) to continue the Supply Agreement with [Wheeler
and Clevenger Oil] or to purchase th[e] contract from [Wheeler
and Clevenger Oil] for 16% of the Selling Price of the Premises
for the 1st 2 years of the contract . . . and 10% for years 9 &
10." <u>Id</u>. The Supply Agreement also includes a handwritten
clause providing that "[i]f New Owner agrees to fulfill the
original obligation to purchase gasoline and/or motor fuels from
[Wheeler and Clevenger Oil] then the Bakers' obligation will
become null & void." <u>Id</u>. at ¶6A.

In sum, the above language gives the Bakers the "option" of
having a purchaser assume the Supply Agreement. This leads to
the conclusion that the Supply Agreement was not intended to be
automatically binding on a purchaser. Instead, apparently, the
purchaser and Wheeler and Clevenger Oil both had the ability to
choose whether the Supply Agreement remained in effect. Thus,
there is a tension between the language providing that the Supply
Agreement is "binding upon" the Bakers' successors and assigns
and the language giving the Bakers the "option" of having the new
purchaser continue the agreement and, if the new purchaser does
not, requiring the Bakers to purchase the contract from Wheeler

and Clevenger Oil.  Consequently, the Court finds that the parties' intent for the covenant to run with the land is not clear.  See Houk v. Ross, 34 Ohio St.2d 77, syllabus ¶2 (1973) (holding that the parties' intent is unclear when a deed restriction is capable of a contradictory interpretation).  As stated above, in the case of such a tension, "all doubts should be resolved against" finding a restriction and in favor of the free use of land.  Bove, 169 Ohio St. at syllabus.  Therefore, the Court concludes that the Supply Agreement does not run with the land.

Having determined that the parties' intent for the Supply Agreement to run with the land is unclear, the Court need not reach the question of whether the agreement touches and concerns the land.  However, the Court notes that there is some question as to whether this is the case.  Although the agreement specifically provides that "said Right to Supply shall Touch and Concern the Land," simply using this language alone is not enough to transform the agreement into one running with the land.  See Columbia Club, Inc. v. American Fletcher Realty Corp., 720 N.E.2d 411, 418 (Ind. App. 1999)(explaining that "a covenant may contain apt words to make it a continuing covenant, yet if its nature or the subject matter of it is such that it does not concern some interest or estate in land, either existing or created by it, it cannot run with the land").

In Montgomery v. Creager, 22 S.W.2d 463 (Texas App. 1929), the court was faced with a similar agreement that limited a gasoline station owner's right to buy gasoline except from a particular distributor.  The court concluded that the limitation did not provide for a restricted use of the gasoline station itself.  Rather, "[t]he contract was one for the purchase and sale of gasoline.  The filling station is only important as identifying the subject-matter of the contract . . ..  The

agreement . . . is certainly not such as attaches to the property." Id. at 466. Likewise, in the instant action, given the option available to the Bakers as to whether the purchaser would continue the Supply Agreement and the buyout provision, the Court simply cannot conclude that the agreement touches and concerns the land such that it runs with the land.

Because the Supply Agreement does not run with the land, it is not binding on the Doans unless they assumed the agreement. As noted above, Wheeler and Clevenger Oil does not argue that the Doans assumed the Supply Agreement. In fact, in his deposition, Mark Clevenger acknowledged that the Doans did not sign the agreement to assume the Supply Agreement:

> Q. [The Doans] wouldn't sign the agreement [to asssume the Supply Agreement] that you guys were negotiating; is that correct?
>
> A. Yes.

Clevenger Depo. at 82. Therefore, the Court concludes that because the Doans were not parties to the Supply Agreement, did not assume it, and the agreement does not run with the land, the Doans are not bound by the Supply Agreement and, thus, could not have breached it. Therefore, Wheeler and Clevenger Oil's motion for summary judgment as to this claim will be denied. The Doans' motion for summary judgment as to this claim will be granted.

2. Breach of Contract Against the Bakers

Wheeler and Clevenger Oil asserts a breach of contract claim against the Bakers based on their failure to pay the buyout amount set forth in the Supply Agreement after the Doans failed to assume the Supply Agreement. The Bakers do not appear to dispute that they have not paid to Wheeler and Clevenger Oil 10 percent of the sale price. However, the Bakers argue that the buyout provision is not enforceable because it is a penalty

11

clause.  They contend that it is a penalty because there is no relationship between the sales price of the gasoline station and the anticipated lost profits for the remaining term of the Supply Agreement.  In response to this argument, Wheeler and Clevenger Oil asserts that the buyout provision was intended not only to compensate it for lost profits for the remaining term of the Supply Agreement but also to compensate it for the costs of the physical improvements it added to the gasoline station.

As stated above, the Supply Agreement provides that "[i]n the event of a sale of the premises the Bakers have the option of allowing the New Purchaser ([s]ubject to [Wheeler and Clevenger Oil's] approval) to continue the Supply Agreement with [Wheeler and Clevenger Oil] or to purchase this contract from [Wheeler and Clevenger Oil] for 16% of the Selling Price of the Premises for the 1st 2 years of the contract . . . and 10% for years 9 & 10." Amended Complaint, Exh. B, ¶6.  The Bakers sold the gasoline station to the Doans in year 10 of the agreement.  The Doans did not continue the Supply Agreement.  Therefore, the question is whether the Bakers are liable for 10 percent of the $275,000.00 purchase price.

To find that a contractual provision is a valid liquidated damages clause, as opposed to an unenforceable penalty, the Court must conclude that: (1) the damages at the time of contracting were uncertain as to the amount and difficult to prove; (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.  See Samson Sales, Inc. v. Honeywell, Inc., 12 Ohio St.3d 27, syllabus (1984).

12

In this case, the Bakers do not contend that the contract as a whole was manifestly unreasonable or that it was not the parties' intention for the stated damages to flow from a breach. The issue is whether at the time of contracting, damages from breach of the Supply Agreement were uncertain as to the amount and difficult to prove.

The Supply Agreement was entered into in connection with the termination of the Bakers' November 8, 1990 lease agreement with MC Development.  The Supply Agreement provided for the transfer of lease improvements and personal property to the Bakers including "[a]ll the improvements to the Bakers' U.S.T. System including all lines, tank linings, red jacket turbine pumps, concrete driveway improvements and concrete tank pad improvements, manholes, manways and Emco Wheaton Eco System." Amended Complaint, Exh. B, ¶2.  In exchange for the above improvements and equipment, the Bakers granted Wheeler and Clevenger Oil the exclusive right to supply the gasoline station with gasoline for a period of 10 years.  See id. at ¶3.

Mr. Clevenger explains that the buyout provision was included out of "concern that in the event that the Bakers sold the facility prior to the expiration of its stated ten (10) year term, to a party who would not accept assignment of the Supply Agreement, [then] [Wheeler and Clevenger Oil] would lose not only profits from the sale of gasoline from the Facility, but would also lose the value of the improvements."  Plaintiff's Response to Bakers Defendants' Motion For Partial Summary Judgment, Exh. 1, Clevenger Aff. ¶4.  Thus, it appears that the value of improvements to the property and hence the property itself relate to Wheeler and Clevenger Oil's potential damages in the event of the Bakers' breach.

The question remains as to whether these damages were uncertain and difficult to prove.  Although the value of the

13

improvements themselves could have been calculated at the time of contracting, it would have been very difficult to calculate the additional business that would be generated from the improvements made to the gasoline station.  See, e.g., Winthrop Resources Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 472 (8th Cir. 2004)(explaining that "[l]iquidated-damages clauses function best when damages include items such as goodwill and loss of profits, which can be difficult to evaluate").  Therefore, the Court concludes that this is a valid liquidated damages clause. Consequently, the Bakers are liable to Wheeler and Clevenger Oil for 10 percent of the purchase price of $275,000.00.  The Bakers' motion for summary judgment as to this claim will be denied. Wheeler and Clevenger Oil's motion for summary judgment as to this claim will be granted.

3. Violation of Lanham Act Against the Doans

Wheeler and Clevenger Oil seeks summary judgment on its claim that the Doans violated the Lanham Act when they allegedly sold non-Exxon branded gasoline while the station was still branded as an Exxon station.  Before addressing the merits of this claim, the Court first will address the Doans' argument that Wheeler and Clevenger Oil lacks standing to assert this claim under the Lanham Act because it is not the owner or registrant of the Exxon mark.

The Doans' standing argument centers on whether Wheeler and Clevenger Oil has standing to sue under under 15 U.S.C. §§1114 and 1125(c).  Section 1114 allows a civil action to be filed by a "registrant" of a trademark.  Section 1125(c) allows for a civil action to be filed by an "owner" of a trademark.  The Doans concluded that Wheeler and Clevenger Oil raises its claims against them under these sections of the Lanham Act based on Wheeler and Clevenger Oil's motion for partial summary judgment which refers to these sections.  See Plaintiff's Motion For

14

Partial Summary Judgment Against The Doans at 5.  However, in Wheeler and Clevenger Oil's reply, it appears to limit its Lanham Act claims to those arising under §1125(a).  See Reply In Support Of Motion For Partial Summary Judgment Against Doans at 2.  The Court notes that this limitation appears to be consistent with the allegations set forth in the complaint which refer the Doans' "misleading representation of fact causing confusion and deceiving customers" and the claim that such conduct violates "Section 1125."  Complaint ¶¶20-21.  Therefore, the Court will address only whether Wheeler and Clevenger Oil has standing to sue under 15 U.S.C. §1125(a).

Wheeler and Clevenger Oil acknowledges that it is not the owner or registrant of the Exxon mark.  However, it contends that claims brought under §1125(a) may be brought by anyone likely to be damaged by a deceptive act regardless of whether that person or entity is the owner or registrant of the mark.  Section 1125(a) provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by *any person* who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a)(1)(emphasis added).

It is well established that one need not be the owner or registrant of a mark to have standing to sue under §1125(a). See Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 160 (1st Cir. 1977).  Instead, a court looks to whether the party

15

asserting the claim has a "reasonable interest" to protect. See Shonac Corp. v. AMKO Intern., Inc., 763 F.Supp. 919, 931 (S.D. Ohio 1991). This test requires that the plaintiff have a pecuniary or commercial interest in the sale of the good bearing the designation of origin. See Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 234 (3rd Cir. 1998).

In this case, Wheeler and Clevenger Oil claims that it was damaged by the Doans' misbranding of the gasoline because the misbranding "directly or indirectly compete[s]" with it in the Marietta, Ohio market. Reply In Support of Plaintiff's Motion For Partial Summary Judgment Against Doans at 3. Thus, the Court concludes that Wheeler and Clevenger Oil has a pecuniary and commercial interest in the proper branding of gasoline and, in particular, Exxon gasoline which it distributes for sale. Therefore, Wheeler and Clevenger Oil has standing to sue under 15 U.S.C. §1125(a).

Turning to the merits of the §1125(a) claim, a claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion. See Johnson v. Jones, 149 F.3d 494, 502 (6th Cir. 1998).

Before reaching the issues of economic effect and likelihood of confusion, the Court first must determine whether the designation was false, i.e., whether the Doans sold non-Exxon branded gasoline while the gasoline station was still branded as Exxon. Mr. Doan addressed this question during his deposition:

> Q. Did you ever sell non-Exxon branded gas while the facility was branded Exxon?
>
> A. I don't know.
>
> Q. Can you elaborate on that?

> A. To my knowledge the fuel came out of the
>    same depot [as Wheeler and Clevenger Oil
>    provided fuel from]
>
>                       . . .
>
> Q. So that would have been Exxon branded gas;
>    is that correct?
>
> A. Possibly.
>
>                       . . .
>
> Q. Did you make it a point to order only
>    Exxon branded fuel while the Exxon signs
>    were still on display [at the gasoline
>    station]?
>
> A. I ordered what to the best of my knowledge
>    all came out of the same place [as Wheeler
>    and Clevenger Oil provided fuel from].

Jeffrey Doan Depo. at 7-8, 47.

Based on the above and for want of any additional evidence, the most that the Court can conclude is that it is unclear whether the Doans sold non-Exxon branded gasoline while the gasoline station was still branded as Exxon. Thus, there is a genuine issue of material fact as to whether the gasoline was falsely designated. Consequently, Wheeler and Clevenger Oil's motion for summary judgment on this claim will be denied. At trial, Wheeler and Clevenger Oil will be required to demonstrate that the designation was false, that it had a substantial economic effect on interstate commerce, and that it created a likelihood of confusion.

4. Conversion Against the Doans

Wheeler and Clevenger Oil seeks summary judgment on its claim that the Doans converted the following items of its property: the sign pole, number changing pole, identification sign and price sign, data relay boxes, associated printer and cables, and topper lights. See Complaint ¶31. Wheeler and

Clevenger Oil claims that the Doans have wrongfully retained and, in some cases, have damaged this property. The Doans claim that the property was always available for Wheeler and Clevenger Oil to pick up and that it did in fact pick up some of the property. Further, the Doans claim that the current state of the property is how it was when the Doans bought the gasoline station in late 2003.

The elements of a conversion claim are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." Kramer Consulting, Inc. v. McCarthy, 284 F.Supp.2d 917, 923 (S.D. Ohio 2003)(relying on Ohio law).

At the outset, the Court notes that both Wheeler and Clevenger Oil and the Doans concede that there are questions of fact concerning the conversion claim. Nonetheless, the Court will review the claims with respect to the property at issue. The Doans seem to contest only Wheeler and Clevenger Oil's ownership of the sign pole. Mr. Doan testified that he assumed that he bought the sign pole as part of the sale of the gasoline station. See Jeffery Doan Depo at 32. Mr. Clevenger testified that Wheeler and Clevenger Oil owns the sign pole. See Clevenger Depo. at 89. Therefore, there is a question of fact as to ownership of the sign pole. Wheeler and Clevenger Oil's motion for summary judgment on the conversion claim for the sign pole will be denied.

Regarding the remaining property, the Court looks only to whether the Doans wrongfully exercised dominion and control over it, see Fidelity & Deposit Co. of Maryland v. Farmers & Citizens Bank of Lancaster, 72 Ohio App. 432, 434 (Fairfield Co. 1943), given that the Doans do not appear to contest Wheeler and Clevenger Oil's ownership of this property. "In the absence of a

18

specific legal duty to return the property, a party asserting a claim for conversion must demonstrate some affirmative act by the defendant in order to prove conversion." <u>Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.</u>, 24 Ohio App.3d 91, 94 (Franklin Co. 1985). Thus, mere inaction is not enough. <u>See</u> <u>id.</u>; <u>see also</u> <u>Wilson Freight Forwarding Co. v. Cleveland, C. & C. Highway</u>, 74 Ohio App. 54, 57 (Hamilton Co. 1943)(explaining that an affirmative act is something more than "mere negligence or nonfeasance"). Wheeler and Clevenger Oil does not explain from where the Doans' alleged legal duty to return this property arose in light of the fact that the Doans did not assume the Supply Agreement. Thus, the Court turns to whether the Doans engaged in an affirmative act of wrongdoing with respect to the property.

Regarding the number changing pole, Mr. Clevenger claims that the Wheeler and Clevenger Oil employee who went to the gasoline station to retrieve it told him that "Mr. Doan wouldn't give him the pole, he wanted to keep it." Clevenger Depo. at 101. By contrast, Mr. Doan claims that the number changing pole still is at the gasoline station for Wheeler and Clevenger Oil to pick up. When asked whether he was still using it, he answered: "No." Jeffrey Doan Depo. at 32. From the deposition testimony, the Court concludes that there is a question of fact as to whether the Doans wrongfully exercised control over the number changing pole. Therefore, Wheeler and Clevenger Oil's motion for summary judgment on the conversion claim for the number changing pole will be denied.

Regarding the identification sign, Mr. Clevenger claims that when the Wheeler and Clevenger Oil employee went to the gasoline station to retrieve it, the identification sign was "completely disassembled" and that "it look[ed] like what they did was rob the ballast and bulbs out of [it]." Clevenger Depo. at 90-91. Mr. Doan did not address this issue in his deposition other than

19

to explain that Wheeler and Clevenger Oil picked up the identification sign on January 18, 2004 and that the photographs he was shown during his deposition depict how the sign and other property were when they were removed and placed at the side of the building by August Environmental. See Jeffrey Doan Depo. at 32, 37. Review of the photographs attached to Mr. Doan's deposition do not enlighten the Court as to the state of the property in that they are difficult to make sense of in the absence of a reference to a particular photograph. Thus, the Court concludes that there is a question of fact as to whether the Doans damaged Wheeler and Clevenger Oil's identification sign. Therefore, Wheeler and Clevenger Oil's motion for summary judgment on the conversion claim for the identification sign will be denied.

Regarding the price sign, Mr. Clevenger claims that it was "completely disassembled." Clevenger Depo. at 90. As with the identification sign, Mr. Doan did not address this issue in his deposition other than to explain that Wheeler and Clevenger Oil picked up the price sign on January 18, 2004 and that the photographs he was shown during his deposition depict how the sign and other property were when they were removed and placed at the side of the building by August Environmental. See Jeffrey Doan Depo. at 32, 37. As stated above, review of the photographs attached to Mr. Doan's deposition do not enlighten the Court as to the state of the property in that they are difficult to make sense of in the absence of a reference to a particular photograph. Thus, the Court concludes that there is a question of fact as to whether the Doans damaged Wheeler and Clevenger Oil's price sign. Therefore, Wheeler and Clevenger Oil's motion for summary judgment on the conversion claim for the price sign will be denied.

Regarding the data relay boxes, Mr. Clevenger claims that

20

they are "still on the wall being used in the present system." Clevenger Depo. at 101. In his deposition, Mr. Doan did not address the question of whether he was using the data relay boxes. He testified only that they are "[s]till there affixed to the building." Jeffrey Doan Depo. at 33. Thus, there is a question of fact as to whether the Doans have wrongfully exercised dominion and control over the data relay boxes. Therefore, Wheeler and Clevenger Oil's motion for summary judgment on the conversion claim for the data relay boxes will be denied.

Regarding the printer and cables, Mr. Clevenger claims that the Doans "[c]ut [Wheeler and Clevenger Oil's] cables" and that the "2400 printer is gone." Clevenger Depo. at 102. Mr. Clevenger acknowledged that "it's possible" that the printer was not at the gasoline station when the Doans took possession of the premises. Id. Mr. Doan claims that "there never was a printer." Jeffrey Doan Depo. at 33. Thus, there is a question of fact as to whether the Doans wrongfully exercised dominion and control over the cables and printer. Therefore, Wheeler and Clevenger Oil's motion for summary judgment on the conversion claim for the cables and printer will be denied.

Regarding the topper lights, Mr. Clevenger claims that the Doans "[b]roke almost all the topper lights." Clevenger Depo. at 102. Mr. Doan did not address this issue in his deposition other than to explain that Wheeler and Clevenger Oil picked up the topper lights on January 18, 2004 and that the photographs he was shown during his deposition depict how the topper lights and other property were when they were removed and placed at the side of the building by August Environmental. See Jeffrey Doan Depo. at 33. As stated above, review of the photographs attached to Mr. Doan's deposition do not enlighten the Court as to the state of the property in that they are difficult to make sense of in

21

the absence of a reference to a particular photograph. Thus, the Court concludes that there is a question of fact as to whether the Doans damaged Wheeler and Clevenger Oil's topper lights. Therefore, Wheeler and Clevenger Oil's motion for summary judgment on the conversion claim for the topper lights will be denied.

B. <u>Doans' Claims</u>

1. <u>Conversion Against the Bakers</u>

The Doans seek summary judgment on their cross-claim of conversion against the Bakers based on the Bakers' failure to reimburse them for $14,785.61 in credit card payments received into Mr. Baker's business account after closing on the sale of the gasoline station, as was required by a contract entered into by Mr. Doan and Mr. Baker. <u>See</u> Doans' Motion For Partial Summary Judgment, Exh. D. The Bakers do not dispute that that Mr. Baker and Mr. Doan entered into a written agreement regarding the credit card processing arrangement. <u>See</u> Baker Depo. at 72. But, the Bakers argue that the Doans have not paid them for other items that were part of the sales transaction including the fuel in the underground storage tanks, cash on hand at the facility, as well as inventory for retail sales at the time of the transaction.

The elements of a conversion claim are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." <u>Kramer Consulting, Inc. v. McCarthy</u>, 284 F.Supp.2d 917, 923 (S.D. Ohio 2003)(relying on the law of the State of Ohio).

The Doans assert an ownership right to the $14,785.61 based on the contract entered into between Mr. Baker and Mr. Doan. This contract provides that: "I, Robert Baker, agree to reimburse Jeffrey L. Doan d.b.a. Doan's Oil X-Change, LLC [for] all

22

payments received by the Exxon Corporation for credit card deposits made electronically to my business account. . . . These payments will be made to Doan's Oil X-Change daily." Doans' Motion For Partial Summary Judgment, Exh. D. Mr. Baker does not dispute that he entered into this agreement. See Baker Depo. at 72. Mr. Baker also does not appear to dispute that the Doans were never reimbursed for the credit card deposits. The Court concludes that the fact that the Doans might owe the Bakers for other items is not relevant to whether the Bakers failed to reimburse the Doans for credit card transactions and therefore converted the Doans' property. The Bakers have not provided the Court with any case law in support of this proposition, nor is the Court aware of any such support. Therefore, the Doans' motion for summary judgment as to the conversion claim will be granted.

2. Breach of Contract Against the Bakers

The Doans seek summary judgment on their cross-claim of breach of contract against the Bakers based on the Bakers' failure to reimburse the Doans for $14,785.61 in credit card payments received into Mr. Baker's business account after closing on the sale of the gasoline station.

The elements of a breach of contract claim are: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. See Doner v. Snapp, 98 Ohio App.3d 597, 600 (Miami Co. 1994). As stated above, the Bakers do not dispute the existence of a valid contract entered into at the closing on the sale of the gasoline station. The Bakers do not dispute that they have not reimbursed the Doans for the credit card transactions. Further, the Bakers do not dispute the amount owing. Although the Bakers claim that they are not required to reimburse the Doans because the Doans have not paid them for items that were part of the sales

23

transaction, there is no evidence that the Doans' alleged duty to pay the Bakers for these items is a condition precedent to Mr. Baker's reimbursing the Doans daily for credit card transactions. "The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract." Goodman v. Sullivan, 94 Ohio App. 390, 393 (Franklin Co. 1952). Therefore, the Doans' motion for summary judgment as to the breach of contract claim will be granted.

## C. Bakers' Claims

### 1. Breach of Contract Against Wheeler and Clevenger Oil

Wheeler and Clevenger Oil seeks summary judgment on the Bakers' counterclaim for breach of contract based on Wheeler and Clevenger Oil's charging rent for signs, charging freight, failure to maintain the high rise sign, and failure to provide monthly gallonage reports. Wheeler and Clevenger Oil contends that the counterclaim is barred by the doctrine of res judicata. According to Wheeler and Clevenger Oil, the Bakers already litigated these claims against Wheeler and Clevenger Oil in the Washington County, Ohio Court of Common Pleas. These claims allegedly were resolved through settlement. See Plaintiff's Motion For Summary Judgment Against Bakers, Exh. 2, Kenneth Clark and Jennifer Clark, and Robert Baker and Pauline Baker v. Wheeler and Clevenger Oil Company, No. 970T293 (Washington County, Ohio Court of Common Pleas).

A claim is barred by the doctrine of res judicata when three requirements are met:

    (1)   the same party or parties in privity with them were present in the prior litigation;

    (2)   a court of competent jurisdiction has entered a valid, final judgment on the merits; and

    (3)   the present action concerns the same subject matter or cause of action as the prior suit.

<u>Anchor Motor Freight, Inc. v. International Broth. of Teamsters,</u>
<u>Chauffeurs, Warehousemen & Helpers of America, Local Union No.</u>
<u>377</u>, 700 F.2d 1067, 1069-1070 (6th Cir. 1983).  In this case, the
Bakers do not dispute that they were parties to the prior
litigation against Wheeler and Clevenger Oil.  <u>See</u> Baker Depo. at
45.  Therefore, the same parties were present in that litigation.
In that case, a final agreed resolution was entered on August 13,
2001.  Such an agreement is a valid final judgment.  <u>See</u> <u>Kershaw</u>
<u>v. Federal Land Bank of Louisville</u>, 556 F.Supp. 693, 697 (M.D.
Tenn. 1983)(holding that "[c]onsent judgments ordinarily are
intended to preclude any further litigation on the claims
presented and thus <u>res</u> <u>judicata</u> applies to valid settlement
agreements").

Regarding whether the Bakers' counterclaim involves the same
subject matter or cause of action, review of the agreed
resolution reveals that it covers freight charges, sign rental,
and malfunction of the high rise sign.  The only claim not
mentioned in the agreed resolution is the Bakers' claim that
Wheeler and Clevenger Oil failed to provide monthly gallonage
reports.  Although this claim was not addressed by the agreed
resolution, the settlement concerned the Bakers' contractual
relationship with Wheeler and Clevenger Oil of which the
requirement to provide monthly gallonage reports was a part.
Thus, this claim could have been presented in the prior
litigation.  <u>See</u> <u>White v. Colgan Elec. Co., Inc.</u>, 781 F.2d 1214,
1216 (6th Cir. 1986)(holding that "if the second action is upon
the same cause as the former one, the judgment on the merits in
the first case is an absolute bar to the subsequent action
between the same parties, not only in respect to every matter
which is actually offered, but also as to every ground of
recovery which might have been presented").  Further, in his
deposition, Mr. Baker acknowledged that the counterclaim

allegations in the instant action relate back to the allegations the Bakers asserted against Wheeler and Clevenger Oil in the Washington County litigation. See Baker Depo. at 45. Thus, the Court concludes that the instant action concerns the same subject matter as the prior action.

The Bakers' argument against finding that their counterclaim is barred by the doctrine of res judicata is that Wheeler and Clevenger Oil breached its part of the settlement agreement by not performing its part. The Court concludes that this argument is not relevant to a determination of whether the counterclaim is barred by the doctrine of res judicata. The Bakers already litigated these claims against Wheeler and Clevenger Oil and they are not permitted to re-litigate them in this forum. Therefore, Wheeler and Clevenger Oil's motion for summary judgment on the Baker's counterclaim of breach of contract will be granted.

2. Indemnification Against the Doans

The Doans seek summary judgment on the Bakers' cross-claim against them for indemnification. The Bakers claim that the Doans are required to indemnify them for 10 percent of the sales price of the gas station that the Bakers owe to Wheeler and Clevenger Oil under the terms of the Supply Agreement.

The Bakers and the Doans do not have an express agreement of indemnification. The Purchase Agreement does not mention the Doans' assumption of the Supply Agreement or any duty to pay 10 percent of the purchase price to Wheeler and Clevenger Oil. Thus, the Court turns to the question of whether there is an implied right of indemnity.

Indemnification is the "right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." Ohio Dept. of Adm. Serv. v. Robert P. Madison Internatl., Inc., 138 Ohio App.3d 388, 397 (Franklin Co. 2000). "[O]ne has an indemnification claim only if the other

26

person was liable to so pay under the law." Id. Thus, the Court must determine whether the Bakers are being required to pay to Wheeler and Clevenger Oil what the Doans should have paid.

In this case, the Bakers did not make the sale of the gasoline station contingent upon the Doans' assumption of the Supply Agreement. Mr. Baker appears simply to have assumed that the Doans would assume the agreement, but that was not part of the Purchase Agreement. See Baker Depo. at 13 and 62. This does not lead to the conclusion that the Doans are required to indemnify the Bakers. Therefore, the Doans' motion for summary judgment as to the Bakers' indemnification claim will be granted.

V.

Based on the above and the claims set forth in the complaint, counterclaims and cross-claims, the claims remaining for trial are as follows:

    1.   Wheeler and Clevenger Oil's claim against the Doans for violation of the Lanham Act.

    2.   Wheeler and Clevenger Oil's claim against the Doans for conversion.

    3.   Wheeler and Clevenger Oil's claim against the Doans for trespass.

    4.   The Doans' counterclaim against Wheeler and Clevenger Oil for tortious interference with a business relationship.

    5.   The Doans' cross-claim against the Bakers for fraud.

    6.   The Doans' cross-claim against the Bakers for promissory estoppel.

    7.   The Bakers' cross-claim against the Doans for costs incident to the sale of the gasoline station.

VI.

27

Based on the foregoing, Wheeler and Clevenger Oil's motion for summary judgment against the Doans (file doc. #74) is DENIED. Wheeler and Clevenger Oil's motion for summary judgment against the Bakers (file doc. #75) is GRANTED.  The Doans' motion for summary judgment (file doc. #73) is GRANTED.  The Bakers' motion for summary judgment (file doc. #77) is DENIED.

Wheeler and Clevenger Oil's motion for sanctions against Mr. Baker (file doc. #76) is GRANTED.  Within 20 days of the date of this Order, counsel for Wheeler and Clevenger Oil shall submit both a bill of costs outlining the expenses incurred in attempting to locate a signed copy of the Purchase Agreement and an affidavit attesting to those costs.

/s/ Terence P. Kemp
United States Magistrate Judge